IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MELISSA MUNCY ex rel. K.M, a minor, | ) ) ) | |
| Plaintiff, | ) ) | No. 12 C 2942 |
| v. | ) ) ) | Magistrate Judge Maria Valdez |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1] | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Melissa Muncy's claim for Supplemental Security Income ("SSI") on behalf of K.M., a minor child born on January 25, 2001. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Muncy's motion for summary judgment [Doc. No. 21] is granted in part and denied in part.

---

[1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND[2]

## I. PROCEDURAL HISTORY

In April 2009, Muncy filed a claim for SSI on K.M.'s behalf, alleging disability since April 1, 2008. The claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 10, 2010. K.M. personally appeared and testified at the hearing and was represented by counsel. Muncy, K.M.'s mother, also testified.

On December 2, 2010, the ALJ denied K.M.'s claim for SSI, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied her request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. FACTUAL BACKGROUND

K.M. was nine years old at the time of the ALJ hearing and was in fourth grade. K.M. had been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and took Focalin to treat the disorder.[3] She was in a regular classroom but was taken out twice a day for special instruction in math and reading, and she received additional time to complete assignments as well as the assistance of a tutoring teacher. Muncy testified that K.M. could only read kindergarten or first-grade picture books with few words and struggled to understand math problems,

---

[2] The facts, taken from the parties' briefs, are undisputed unless otherwise noted.

[3] Her physician had once tried to increase the dosage of Focalin to assist with her attention difficulties, but K.M. suffered a side effect of auditory hallucinations at the higher dosage.

needing someone to read them to her. She had difficulty writing and often had to explain what she had intended to express. K.M. also had a hard time staying focused and finishing projects. She did have friends at school, who tried to help her socially and academically.

In a November 2009 function report completed by Muncy, she stated that K.M. could not read and understand simple words, sentences, and stories; write in script; spell most three- or four-letter words; add and subtract numbers over ten; write a simple six- or seven-sentence story; understand money; or tell time. She had a limited ability to stay with a task to completion. She could not deliver telephone messages, tell jokes, or explain why she did something. Her speech could only sometimes be understood by people who did not know her.

The record also contains several of K.M.'s Individualized Education Program ("IEP") reports and other teacher questionnaires, the first of which was dated April 2, 2008, immediately after her alleged disability onset date. Low-level abilities in math, reading, and concentration were noted in the 2008 and 2009 reports.

A teachers' questionnaire completed in May 2009 showed that K.M., who was in second grade, was reading and writing at the kindergarten level, with math skills in the early first-grade level. Her teachers noted that K.M. had a serious problem in the area of her ability to acquire and use information, rating her a 4 out of 5, with 5 being the most severe level. She had serious problems in comprehending oral instructions; understanding school and content vocabulary; reading and comprehending written material; understanding and participating in class

3

discussions; providing organized oral explanations and adequate descriptions; expressing ideas in written form; learning new material; and applying problem solving skills in class discussion. She was found to have very serious problems (5 out of 5) in comprehending and doing math problems as well as recalling and applying previously learned materials. K.M. required a lot of motivation and encouragement while working and needed extra time for thinking when working and responding. She also had serious problems with attending to and completing tasks, including focusing long enough to complete an assignment; refocusing on a task; working without distracting herself or others; and working at a regular pace. Her teachers believed that K.M. tried very hard to complete her classwork and homework but had little success without help.

 The February 2010 IEP also stated that K.M. could not yet spell or read independently or at grade level; she could not complete workbook pages independently; relied on her fingers for simple addition and required a number line for larger numbers; and had difficulty with math problems that required reading or more than one step. She continued to need additional assistance from the school in the form of special educational services, modified grading criteria, and an extended school year.

 K.M.'s November 2010 IEP showed that she remained at the first-grade level in word reading, reading comprehension, spelling, and math reasoning, with some word decoding at the pre-kindergarten level. She was making some progress in basic reading and reading comprehension, reading fluency, and writing due to

4

intense intervention. She was allowed the use of a "scribe," or someone to write for her, during class assignments. As a result of her identified learning disability, K.M.'s needs were found to be "significantly different and exceed general educational resources," (R. 210), and her performance was noted to be significantly below that of her peers or expected standards. Although her effort was high, she could not read grade-level material, had difficulty comprehending material when reading independently, and would sometimes just say random answers in response to math problems. The IEP noted that Muncy could see some progress being made, particularly that K.M. understands information long-term once she finally "gets it," after being walked through the learning process.

K.M. was examined for the state agency on June 19, 2009 by Melanie Boyd, M.S., who determined that K.M. was well below her peers' average with expressive language and had mild deficits in receptive language. Ronald Havens, Ph.D., did not examine K.M., but after reviewing the file, concluded on July 30, 2009 that her impairments did not meet, medically equal, or functionally equal a Listing. Although he found that her problems in Acquiring and Using Information and Attention and Completing Tasks were less than marked, he did note that her teacher's questionnaire indicated severe or serious problems in those areas. He further found that K.M.'s activity reports were credible. On November 23, 2009, Leslie Ryans, Ph.D. also reviewed the record and found that her condition did not meet medically equal, or functionally equal a Listing, noting "mild delays staying on the task at hand," (R. 407), and borderline intellectual functioning.

### C. ALJ Decision

The ALJ found that K.M. had the severe impairments of a learning disorder and ADHD, but that none of her impairments, alone or in combination, met, equaled, or functionally equaled a Listing. Specifically, the ALJ found less than marked limitations in Acquiring and Using Information, Attending and Completing Tasks, and Interacting and Relating with Others, leading to a finding that K.M. is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

For a child to qualify as disabled and thus eligible for SSI, she must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations provide for a three-step framework for analyzing the disability claims of children. *See* 20 C.F.R. § 416.924(a). First, the ALJ must determine if the child is engaged in substantial gainful activity; if she is, there will be a finding of no disability. Second, if the child does not have a severe medical impairment or combination of impairments, that will also lead to a finding of no disability. Third, the ALJ must determine if the severe impairment(s) meet, medically equal, or functionally equal the Listings of Impairments found at 20 C.F.R. pt. 404, subpt. P, App. 1 and also meet the duration requirement. If so, that will lead to a finding of disability.

To determine whether an impairment is functionally equivalent to a Listing, the ALJ must analyze the severity of the impairment in six domains: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." *Hopgood v. Astrue*, 578 F.3d 696, (7th Cir. 2009); *see* 20 C.F.R. § 416.926a(b)(1). The child's impairments "must be of listing-level severity; *i.e.*, it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). A "marked" limitation is found when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation also includes "a limitation that is 'more than moderate' but 'less than extreme.'" *Id*. An "extreme" limitation exists when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme limitation," however, "does not necessarily mean a total lack or loss of ability to function." *Id*.

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir.

2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error because: (1) it improperly evaluated Muncy's credibility; (2) it did not properly consider the teachers' reports; (3) it did not fairly evaluate K.M.'s testimony; (4) it accorded too much weight to the agency reviewers' opinions; and (5) it failed to find support in the record for the determination of K.M.'s limitations.

Muncy primarily contends that the ALJ erred in assessing K.M.'s level of functioning in the domains of Acquiring and Using Information and Attending and Completing Tasks. In the area of Acquiring and Using Information, the ALJ noted K.M.'s below grade-level achievement in reading and math, as well as her second-grade teacher's assessment that she had "several serious problems in acquiring and using information." (R. 16.) He also acknowledged her teacher's admonition that K.M. required a lot of motivation and encouragement while working as well as the substantial amount of special education services she received every week, totaling 623 minutes of special services inside and outside the classroom.

In finding that her limitation in this domain was "less than marked," the ALJ relied exclusively on reports of K.M.'s effort and improvement, rather than her actual functional limitations. He cited to K.M.'s testimony that "she loves school," as well as reports that she tries her best and is a diligent worker. The ALJ was also swayed by statements that her reading fluency has "increased," she has made "a lot of progress in math, reading, and writing," and that her parent reported improvement at school during a physician's visit. (R. 17.) Nowhere, however, does the ALJ analyze whether K.M.'s limitations, even in her motivated and "improved" state, nevertheless may be "marked" in the domain of Acquiring and Using Information. His reliance on the DDS non-reviewing consultants' reports in making this finding is not persuasive. Although the Commissioner maintains that the state agency reviewers did consider the May 2009 teachers' questionnaire in concluding that she had less than marked limitations, neither reviewer explained the reasons they disregarded source opinions they deemed to be credible. The Commissioner further argues that, although the teachers' questionnaire noted "serious" problems in the areas of Acquiring and Using Information and Attending and Completing Tasks, "it does not indicate that K.M. had marked limitations in these domains." (Def.'s Resp. at 4.) But "the regulations do not require a complete impairment, only serious interference, to qualify as a marked limitation." *See Hopgood*, 578 F.3d at 703. Given the consistent reports of serious limitations reported by K.M.'s teachers and mother, whose assessments were all deemed to be credible by the ALJ, the ALJ on remand is cautioned to more carefully examine K.M.'s limitations in this area of

functioning. *See id.* at 700 (finding ALJ's analysis deficient where it failed to explain why teachers' reports finding serious problems were not credited).

Similarly, in the area of Attending and Completing Tasks, the ALJ found a less than marked limitations, concluding that the impairment of ADHD is well-controlled by medication. The ALJ did discuss the report of her second-grade teacher that K.M. had little success in completing homework and classwork without assistance, but he instead credited K.M.'s testimony that she pays attention in school and follows the teacher's instructions, as well as the IEP that stated K.M. can be moved from a distraction with a verbal or physical cue.

The Court finds that the ALJ did not properly analyze K.M.'s limitation in the area of Attending and Completing Tasks. First, in concluding that her ADHD was controlled by medication, the ALJ did not discuss the fact that her physician previously increased the dosage in order to better assist with her deficits; the dosage was only decreased in response to significant side effects. Furthermore, as the ALJ's opinion described, a child without an impairment should be able to, among other things, change activities or routines without distraction, stay on task when appropriate, sustain attention well enough to participate in group sports or read by herself, and to complete a transition task without extra reminders and accommodation. (R. 17); *see* 20 C.F.R. § 416.926a(h)(2)(iv). He also described examples of limited functioning, which include repeatedly becoming sidetracked from activities; becoming easily frustrated and giving up on tasks, even ones the child is capable of completing; and requiring extra supervision to keep the child

11

engaged in an activity. (R. 17); see 20 C.F.R. § 416.926a(h)(3). The ALJ's assessment of this domain appeared to disregard completely the fact that K.M. had substantial extra supervision and required significant reminders and assistance to stay on task and complete her work. An ALJ may not selectively identify evidence that supports his conclusion, while ignoring related evidence that supports a finding of disability. *See Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."). On remand, the ALJ must discuss K.M.'s limitations in this domain more fully, specifically as it relates to her ability to attend and complete tasks without substantial guidance and assistance.

## CONCLUSION

For the foregoing reasons, Plaintiff Melissa Muncy's motion for summary judgment [Doc. No. 21] is granted in part and denied in part. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**  **ENTERED:**

*[signature: Maria Valdez]*

**DATE:    January 28, 2015**

　　　　　　　　　　　　　　　　　　　　**HON. MARIA VALDEZ**
　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**